**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT`**
**SOUTHERN DISTRICT OF NEW YORK**

---

SANDY YUWONO, *on behalf of himself, FLSA*
*Collective Plaintiffs, and the Class,*

Plaintiff,

v.

POKE FIDI LLC
          d/b/a CHIKARASHI FIDI,
POKE NYC LLC
          d/b/a CHIKARASHI CHINATOWN,
POKE NOMAD LLC
          d/b/a CHIKARASHI NOMAD,
CANAL ARCADE LLC d/b/a NAKAJI,
JOHN DOE CORPORATION d/b/a KONO,
MICHAEL JONG LIM,
IVY TSANG a/k/a IVY CHU,
JONATHAN CHU, and SELWYN CHAN,

Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, SANDY YUWONO (hereinafter, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, POKE FIDI LLC d/b/a CHIKARASHI ISSO, POKE NYC LLC d/b/a CHIKARASHI CHINATOWN, POKE NOMAD LLC d/b/a CHIKARASHI NOMAD, CANAL ARCADE LLC d/b/a NAKAJI, JOHN DOE CORPORATION d/b/a KONO, ("Corporate Defendants"), MICHAEL JONG LIM, IVY TSANG a/k/a IVY CHU, JONATHAN CHU, and

1

SELWYN CHAN ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he, FLSA Collective Plaintiffs and similarly situated individuals are entitled to recover from Defendants: (1) unpaid minimum wages due to an invalid tip credit; (2) unpaid wages, including overtime, due to time-shaving; (3) unpaid tip compensation due to an invalid tip pooling policy; (4) unlawfully retained gratuities; (5) liquidated damages; and (6) attorney's fees and costs.

2.      Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages due to an invalid tip credit; (2) unpaid wages, including overtime, due to time-shaving; (3) unpaid spread of hours premium; (4) unpaid tip compensation due to an invalid tip pooling policy; (5) unlawfully retained gratuities; (6) statutory penalties; (7) liquidated damages; and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.      At all relevant times herein, Plaintiff SANDY YUWONO ("Plaintiff"), was and is a resident of Queens County, New York.

6.      Individual Defendants collectively own and operate a restaurant enterprise, comprised of five (5) locations in New York that have been under the following trade names:

a.  Chikarashi Financial District, 38 Rector Street, New York, NY 10006;

b.  Chikarashi Chinatown, 227 Canal Street, New York, NY 10013;

c.  Chikarashi Nomad, 1158 Broadway, New York, NY 10001;

d.  Nakaji, 48A Bowery, New York, NY 10013; and

e.  Kono, 46 Bowery, New York, NY 10013.

(collectively, the "Restaurants")

7.      Defendants own and operate the Restaurants as a single integrated enterprise. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

a.  The Restaurants share common ownership through Individual Defendants. *See* **Exhibit A**.

b.  The Restaurants jointly advertise with multiple publications, referring to Individual Defendants as co-owners with Defendant Michael Jong Lim. *See* **Exhibit B**.

c.  Similarly, all the Restaurants are held out to the public as being co-owned by the Individual Defendants as it is asserted on Defendants' public reports. Moreover, Corporate Defendants POKE NOMAD LLC, POKE FIDI LLC, and POKE NYC LLC list The LLC at 183 Centre Street, New York, New York as their agent of service on The New York Secretary of State – Division of Corporations site. *See* **Exhibit C**.

d.  The *Clustr Maps* search results lists Individual Defendant JONATHAN CHU as a known resident of 183 Centre Street which is the "business registration address for

3

35 companies including Corporate Defendants POKE NOMAD LLC, POKE FIDI LLC, and POKE NYC LLC. *See* **Exhibit D**.

e.   See the Individual Defendant JONATHAN CHU is listed as a principal on the liquor license associated with the addresses of Defendants CANAL ARCADE LLC d/b/a NAKAJI. *See* **Exhibit E**.

f.   All the Restaurants have a centralized Human Resources Department and Administration Department that deals with hiring, firing, and administering all the Restaurants' work force. For example, Defendants' General Manager, Louis Andia, sent an email to all CHIKARASHI FIDI employees to inform them the restaurant would be closing using his NAKAJI email address. *See* **Exhibit F.**

g.   *See* **Exhibit G**, a screenshot taken from Defendants' website during the relevant period, further demonstrating the Restaurants centralized Human Resources Department. **Exhibt G** lists NAKAJI General Manager, Louis Andia on the CHIKARASHI website as General Manager of the CHIKARASHI restaurants.

h.   At all relevant times, Defendants listed and advertised the CHIKARASHI restaurants jointly. *See also* **Exhibit G**.

i.   The Restaurants have the same owners and manages, and employees are freely transferable among the Restaurants. *See* **Exhibit H.**

j.   The Restaurants all serve Japanese cuisines, have similar menus, serve similar goods, and have the same suppliers.

k.   Likewise, all the Restaurants share and utilize similar décor and ambience inspired by traditional Japanese restaurants.

8.    Corporate Defendant POKE FIDI LLC d/b/a CHIKARASHI ISSO is a domestic limited liability company organized under the laws of New York with a principal place of business located at 38 Rector Street, New York, NY 10006 and an address for service of process located at 183 Centre Street, 6th Floor, New York, NY 10013.

9.    Corporate Defendant POKE NYC LLC d/b/a CHIKARASHI CHINATOWN is a domestic limited liability company organized under the laws of New York with a principal place of business located at 227 Canal Street, Store #3, New York, NY 10013 and an address for service of process located at 183 Centre Street, 6th Floor, New York, NY 10013.

10.    Corporate Defendant POKE NOMAD LLC d/b/a CHIKARASHI NOMAD is a domestic limited liability company organized under the laws of New York with a principal place of business located at 1158 Broadway, New York, NY 10001 and an address for service of process located at 183 Centre Street, 6th Floor, New York, NY 10013.

11.    Corporate Defendant CANAL ARCADE LLC d/b/a NAKAJI is a domestic limited liability company organized under the laws of New York with a principal place of business located at 48A Bowery Street, New York, NY 10013 and an address for service of process located at 183 Centre Street, 6th Floor, New York, NY 10013.

12.    Upon information and belief, Corporate Defendant JOHN DOE CORPORATION d/b/a KONO is an unknown corporation operating the restaurant located at 46 Bowery Street, New York, NY 10013. JOHN DOE CORPORATION d/b/a KONO has its operations controlled by Individual Defendants MICHAEL JONG LIM, IVY TSANG a/k/a IVY CHU, JONATHAN CHU, and SELWYN CHAN. Individual Defendants MICHAEL JONG LIM, IVY TSANG a/k/a IVY CHU, JONATHAN CHU, and SELWYN CHAN  exercise control over the employment terms and conditions of those working for Defendant JOHN DOE CORPORATION d/b/a KONO. Individual

5

Defendants MICHAEL JONG LIM, IVY TSANG a/k/a IVY CHU, JONATHAN CHU, and SELWYN CHAN have and exercise the power and authority to determine the rate and method of pay, determine work schedules, maintain employment records, and otherwise affect the quality of employment of employees of JOHN DOE CORPORATION d/b/a KONO. Individual Defendants MICHAEL JONG LIM, IVY TSANG a/k/a IVY CHU, JONATHAN CHU, and SELWYN CHAN exercise functional control over the business and financial operations of JOHN DOE CORPORATION d/b/a KONO and has authority over all employee-related decisions including payroll, personnel, and wage and hour policies concerning employees. While JOHN DOE CORPORATION d/b/a KONO is ultimately owned by a separate corporation, Defendants operate their business as a single integrated enterprise.

13.     Individual Defendant MICHAEL JONG LIM is a co-owner of Corporate Defendants. MICHAEL JONG LIM exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. MICHAEL JONG LIM exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules, conditions of employment, and determine the rate and method of compensation of employees, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to MICHAEL JONG LIM directly regarding any of the terms of their employment, and MICHAEL JONG LIM would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. MICHAEL JONG LIM exercised functional control over the business and financial operations of Corporate Defendants. MICHAEL JONG LIM had the power and authority to supervise and

control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

14.     Individual Defendant IVY TSANG a/k/a IVY CHU (hereinafter, "IVY TSANG") is a co-owner of Corporate Defendants. IVY TSANG exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. IVY TSANG exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules, conditions of employment, and determine the rate and method of compensation of employees, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to IVY TSANG directly regarding any of the terms of their employment, and IVY TSANG would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. IVY TSANG exercised functional control over the business and financial operations of Corporate Defendants. IVY TSANG had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

15.     Individual Defendant JONATHAN CHU is a co-owner of Corporate Defendants. JONATHAN CHU exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. JONATHAN CHU exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules, conditions of employment, and determine the rate and method of compensation of employees, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to JONATHAN CHU directly regarding any of the terms of their employment, and JONATHAN CHU would have the authority to effect

any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. JONATHAN CHU exercised functional control over the business and financial operations of Corporate Defendants. JONATHAN CHU had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

16.     Individual Defendant SELWYN CHAN is a co-owner of Corporate Defendants. SELWYN CHAN exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. SELWYN CHAN exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules, conditions of employment, and determine the rate and method of compensation of employees, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to SELWYN CHAN directly regarding any of the terms of their employment, and SELWYN CHAN would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. SELWYN CHAN exercised functional control over the business and financial operations of Corporate Defendants. SELWYN CHAN had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

17.     At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of FLSA, NYLL, and regulations thereunder.

18.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

19.     At all relevant times, Plaintiff was Defendants' employee within the meaning of NYLL §§ 2 and 651.

20.     At all relevant times, Defendants were Plaintiff's employers within the meaning of NYLL §§ 2 and 651.

21.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt, front-of-house and back-of-house employees (including, but not limited to, waiters, delivery persons, servers, runners, bussers, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (herein, "FLSA Collective Plaintiffs").

23.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay employees their proper wages, including overtime, due to time-shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs: (i) unpaid wages due to an invalid tip credit; (ii) unpaid wages, including overtime, due to time shaving; (iii) unpaid tip compensation due to an invalid tip pooling policy; (iv) unlawfully retained gratuities; (v) liquidated damages; and (vi) attorney's fees and costs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

24.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

25.     Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt, front-of-house and back-of-house employees (including, but not limited to, waiters, delivery persons, servers, runners, bussers, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (the "Class Period").

26.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

27.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees

("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Tipped Subclass.

28.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of: (i) failing to pay minimum wages due to an invalid tip credit; (ii) failing to pay wages, including overtime, due to time-shaving; (iii) failing to pay spread of hours premium per requirements of NYLL; (iv) failing to provide proper tip compensation due to an invalid tip pooling policy; (v) failing to pay tip compensation due to unlawfully retaining Class members' gratuities; (vi) failing to provide proper wage statements per requirements of NYLL; and (vii) failing to properly provide wage notices to Class members, at the date of hiring and annually, per requirements of NYLL.

29.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

30.     With regard to Plaintiff and the Tipped Subclass, Defendants also failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under NYLL. Plaintiff and the Tipped Subclass similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total

hours worked during a given shift each workweek; (iii) implemented an invalid tip pooling scheme; (iv) illegally retained tips; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

31.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

32.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small, in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for

Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33.     Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

34.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a.   Whether Defendants employed Plaintiff and the Class within the meaning of New York law and applicable state laws;

   b.   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and Class members properly;

   c.   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

   d.   Whether Defendants properly notified Plaintiff and Class members of their hourly rates;

   e.   Whether Defendants properly compensated Plaintiff and Class members for all hours worked;

f.   Whether Defendants operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class members for all hours worked;

g.   Whether Defendants properly paid employees their corresponding Spread of Hours premium as required under NYLL;

h.   Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

i.   Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

j.   Whether Defendants instituted an improper tip pool whereby managers and non-tipped employees participated;

k.   Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

l.   Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under NYLL and applicable state laws; and

m.  Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL and applicable state laws.

## **STATEMENT OF FACTS**

35.   On October 25, 2021, Plaintiff SANDY YUWONO was hired by Defendants to work as a server for Defendants' "Chikarashi Isso" (the "Restaurant") located at 38 Rector Street,

New York, NY 10006. Plaintiff was employed by Defendants until in or around January 1, 2022, when the Restaurant permanently closed.

36.     During his employment, Plaintiff was required to clock in or out for his shifts. Plaintiff was scheduled to work five (5) days per week from 4:00 p.m. to 10:00 p.m. on Mondays through Fridays. At least once per week, Plaintiff was scheduled to work a double shift from 11:00 a.m. to 10:00 p.m. Although Plaintiff would arrive 15 minutes early for every shift, managers would not allow him to clock in until the start of his scheduled shift. Despite the fact that Plaintiff had a set schedule, Defendants required Plaintiff to stay late and perform work up to and until 1:00 a.m. as needed. Thus, Plaintiff regularly worked at least forty-five (45) hours per week. Similarly, FLSA Collective Plaintiffs and Class members were regularly scheduled to work more than forty (40) hours each week and were similarly required to work past their scheduled shifts.

37.     Throughout Plaintiff's employment with Defendants, he was compensated at a tip credit minimum wage of $10.00 per hour. Plaintiff was always paid via direct deposit and never received any paystubs from Defendants. However, Defendants did not properly compensate Plaintiff for claiming this tip credit. As a result, Plaintiff was paid below the minimum wage, while Defendants claimed an invalid tip credit. Based on his personal observations, Plaintiff knows that other nonexempt employees were also compensated at an invalid tip credit rate.

38.     Although Plaintiff regularly worked over forty (40) hours each week, Defendants compensated Plaintiff at his regular rate and not the required overtime premium for hours worked in excess of forty (40), as required under FLSA and NYLL. Similarly, FLSA Collective Plaintiffs and Class members regularly worked in excess of forty (40) hours per workweek, but never received any overtime compensation for hours worked in excess of forty (40) per week.

39.    At all times of Plaintiff's employment, Plaintiff was unable to take a free and clear one (1) hour meal break each shift because the Restaurant was too busy, and Defendants required Plaintiff to work during his supposed meal break. Nevertheless, Plaintiff was not paid for this time each shift. Similarly, FLSA Collective Plaintiffs and Class members were not permitted to take a free and clear one (1) hour meal break each shift because they too were required to work through these breaks, for which they were not compensated. As a result, Defendants time shaved Plaintiff, FLSA Collective Plaintiffs, and Class members significant wages, including overtime wages.

40.    At all relevant times, Plaintiff and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under FLSA or NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two hours or 20% of the total hours worked each shift; (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (iv) failed to accurately keep track of daily tips earned and maintain records thereof.

41.    Specifically, Plaintiff was required to engage more than two hours or 20% of his working time performing non-tipped related activities, including, but not limited to, polishing silverware and glassware, cleaning the windows, sweeping, and mopping the bathrooms in the Restaurant, among other duties. Even though Defendants required Plaintiff and Tipped Subclass employees to engage in non-tipped activities in excess of two hours or 20% of the total hours worked each shift, Defendants improperly claimed tip credit for all hours worked by tipped employees.

42.     Throughout his employment, Plaintiff was subject to an invalid tip pool wherein managers and other waiters and bussers who leave early were allowed to remain in the tip pool for the entire night. As an example, if a patron came in at 9:15 p.m. when only Plaintiff was working, all tipped employees would share the tip. The Tipped Subclass similarly suffered from Defendants' utilization of an invalid tip pool.

43.     Plaintiff regularly worked shifts exceeding ten (10) hours in duration. However, he never received any spread of hours premium for working such shifts, as required under NYLL. Similarly, Class members regularly worked shifts exceeding ten (10) hours in duration but were never paid spread of hours premium.

44.     At no time during the relevant periods did Defendants provide Plaintiff or Class members with proper wage statements as required by NYLL.

45.     At no time during the relevant periods did Defendants provide Plaintiff or Class members with proper tip notices as required by NYLL.

46.     At no time during the relevant periods did Defendants provide Plaintiff or Class members with proper wages notices, at the beginning of employment and annually thereafter, as required by NYLL.

47.     Defendants knowingly and willfully operated their business with a policy of not paying FLSA minimum wage or New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiff, FLSA Collective Plaintiffs and Tipped Subclass members. Defendants were not entitled to claim any tip credit under NYLL.

48.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class members their proper wages, including overtime.

49.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL.

50.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL.

51.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF FAIR LABOR STANDARDS ACT**

52.     Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as fully set forth herein.

53.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

54.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

55.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

56.     At all relevant times, Defendants had a policy and practice that failed to pay proper minimum wages, including overtime, due to invalid tip credit to Plaintiff and FLSA Collective Plaintiffs

57.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages, including overtime, to Plaintiff and FLSA Collective Plaintiffs due to time shaving policies.

58.     At all relevant times, Defendants had a policy and practice of unlawfully retaining Plaintiff's and a subclass of FLSA Collective Plaintiffs' gratuities.

59.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

60.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, when Defendants knew or should have known such was due.

61.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

62.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

63.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to invalid tip credit, unpaid overtime wages due to time shaving, unlawful tip retentions, plus an equal amount as liquidated damages.

64.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF NEW YORK LABOR LAW

65. Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as if fully set forth herein.

66. At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

67. Defendants engaged in a policy and practice of refusing to pay Plaintiff and Tipped Subclass members the New York City minimum wage due to an invalid tip credit.

68. Defendants willfully violated the rights of Plaintiff and Tipped Subclass members by unlawfully retaining gratuities, in direct violation of NYLL.

69. Defendants failed to properly notify employees of their tips and tip pooling policies, in direct violation of NYLL.

70. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members proper wage notices, at date of hiring and annually thereafter, as required under NYLL.

71. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Tipped Subclass members proper tip notices, at date of hiring and annually thereafter, as required under NYLL.

72. Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under NYLL.

73. Defendants knowingly and willfully operated their business with a policy of not paying employees their wages, including overtime, as required under NYLL.

74. Defendants knowingly and willfully operated their business with a policy of not paying spread of hours premium, as required under NYLL.

75.     Due to Defendants' NYLL violations, Plaintiff, Class Members and the Tipped Subclass members are entitled to recover from Defendants unpaid wages due to an invalid tip credit, tip compensation due to invalid tip pooling, unlawfully retained gratuities, unpaid wages, including unpaid overtime, due to time shaving, unpaid spread of hours premium, damages for unreasonably delayed payments, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, Class members, and Tipped Subclass members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including overtime, under FLSA and NYLL;

d.  An award of unpaid spread of hours pursuant to NYLL;

e.  An award of unpaid wages due to invalid tip credit deductions under NYLL;

f.  An award of unlawfully retained gratuities under FLSA and NYLL;

g.  An award of liquidated damages as a result of Defendants' willful failure to pay wages, including overtime wages, pursuant to FLSA and NYLL;

h.  An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

i.  Designation of Plaintiff as Representatives of FLSA Collective Plaintiffs;

j.  Designation of Plaintiff as Representatives of the Tipped Subclass members;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.  Designation of Plaintiff as Representative of the Class; and

m.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date: June 16, 2022
      New York, New York

Respectfully submitted,

By: /s/ *CK Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*