**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SANDY YUWONO,
*on behalf of himself, FLSA Collective Plaintiffs, and*
*the Class,*

                              Plaintiff,

          -against-

POKE FIDI LLC
    d/b/a CHIKARASHI FIDI,
POKE NYC LLC
    d/b/a CHIKARASHI CHINATOWN,
POKE NOMAD LLC
    d/b/a CHIKARASHI NOMAD,
CANAL ARCADE LLC
    d/b/a NAKAJI,
JOHN DOE CORPORATION,
    d/b/a KONO,
MICHAEL JONG LIM,
IVY TSANG a/k/a IVY CHU,
JONATHAN CHU,
and SELWYN CHAN,
                Defendants.

Case No.: 22-cv-05052 (JLR)(JW)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**CONDITIONAL COLLECTIVE CERTIFICATION**

C.K. Lee, Esq. (CL 4086)
Lee Litigation Group, PLLC
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

## TABLE OF CONTENTS

EXHIBITS ............................................................................................................... iii

TABLE OF AUTHORITIES ................................................................................. iv

I.      PRELIMINARY STATEMENT ........................................................... 1

II.     DEFENDANTS' RESTAURANTS OPERATE AS A SINGLE
        INTEGRATED ENTERPRISE ............................................................ 1

        A.    RELATED ACTIVITIES ........................................................... 3

        B.    COMMON CONTROL .............................................................. 4

        C.    COMMON BUSINESS PURPOSE ........................................... 5

III.    PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS ................... 5

        A.    FAILURE TO COMPENSATE PLAINTIFF AND COVERED EMPLOYEES THEIR
              WAGES DUE TO DEFENDANTS' INVALID TIP CREDIT DEDUCTIONS ........... 6

              i.     Defendants Failed to Properly Notify Plaintiff and Covered
                     Employees as Required under the FLSA ................................. 6

              ii.    Defendants Routinely Required Plaintiff and Covered Employees
                     to Perform Non-tipped Activities for More Than 20% of Their
                     Shifts ........................................................................................ 9

        B.    FAILURE TO COMPENSATE PLAINTIFF AND COVERED EMPLOYEES THE
              COVERED EMPLOYEES THE PROPER WAGES, INCLUDING OVERTIME, DUE
              TO TIME-SHAVING ............................................................... 10

              i.     Defendants' Improper Calculation of Overtime Rates ........... 11

              ii.    Defendants' Improper Meal Break Deductions ....................... 12

        C.    FAILURE TO COMPENSATE PLAINTIFF AND COVERED EMPLOYEES TIPPED
              COMPENSATION DUE TO UNLAWFULLY RETAINED GRAUITIES ................. 13

        D.    FAILURE TO COMPENSATE PLAINTIFF AND COVERED EMPLOYEES DUE
              TO AUTOMATIC MEAL CREDIT DEDUCTIONS .................................... 14

IV.     PLAINTIFF IS SIMILARLY SITUATED AS COVERED EMPLOYEES .................... 16

V.      ARGUMENT ...................................................................................... 19

        A.    THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION AND ORDER
              NOTICE ................................................................................. 19

i

       i.      The Standard for Conditional Certification and Notice Is Lenient ........................19

       ii.     The Underlying Merits of the Case Are Immaterial to the
               Determination of Conditional Certification and Notice ........................................21

       iii.    Plaintiff Has Made the Modest Factual Showing Required for
               Conditional Certification ........................................................................................22

  B.    EARLY NOTICE TO 'SIMILARLY SITUATED' EMPLOYEES IS APPROPRIATE
       AND NECESSARY .......................................................................................................... 23

       i.      Sending Expedited Notice to "Similarly Situated" Employees
               Fulfills the FLSA's Broad Remedial Purposes ......................................................24

  C.    DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS
       PROPER AND NECESSARY UNDER § 216(b) ......................................................... 25

  D.    DISTRIBUTION OF THE NOTICE BY MAIL, E-MAIL, AND TEXT MESSAGE IS
       FAIR AND PROPER....................................................................................................... 26

  E.    THE PROPOSED NOTICE IS FAIR AND ADEQUATE ........................................... 27

  F.    OPT-IN NOTICE PERIOD OF SIX YEARS IS APPROPRIATE ............................... 27

  G.    OPT-IN PLAINTIFFS' CONSENT FORMS SHOULD BE SENT TO PLAINTIFF'S
       COUNSEL ....................................................................................................................... 28

  H.    EQUITABLE TOLLING.................................................................................................. 28

VI.   CONCLUSION.........................................................................................................................29

## EXHIBITS

**Exhibit A** – Proposed Notice and Consent Form

**Exhibit B** – A screen shot of Defendants' shared menu advertising from their website

**Exhibit C** – A screen shot of Defendants' website listing a shared email address to contact their Restaurants

**Exhibit D** – A screen shot from Defendants' website advertising a shared webpage to make reservations at the Restaurants

**Exhibit E** – A screen shot from Defendants' website advertising their shared "Team" and an email from the General Manager at Defendants' Restaurants to employees

**Exhibit E1** – A screen shot of an email from the General Manager at Defendants' Restaurants to employees at the Restaurants

**Exhibit F** – Defendants' produced Employee List for "Poke Fidi," "Poke NYC;" "Poke Nomad:" and "Nakaji" (a.k.a. "Canal Arcade"), including employees' regular and overtime hourly pay rates

**Exhibit G** – News reports regarding the Individual Defendants and the Defendant Restaurants

**Exhibit H** – A sampling of Plaintiff's time and wage records, and Wage Notice Form

**Exhibit I** – A sampling of Covered Employees' wage records showing compensation at tip credit rates and improper calculation of overtime rates

**Exhibit J** – A sampling of Covered Employees' wage records showing improper meal credit deductions

# TABLE OF AUTHORITIES

## CASES

*Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901, 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007) .................................................................................... 2, 19, 22, 25

*Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998)................................ 2, 3, 4

*Bhumithanarn v. 22 Noodle Mkt. Corp.*, 14-CV-3624, 2015 U.S. Dist. LEXIS 90616, 2015 WL 4240985 (S.D.N.Y. July 13, 2015) ............................................................................ 27

*Braunstein v E. Photographic Labs.*, 600 F.2d 335 (2d Cir. 1975) ........................................ 23

*Brennan v. Arnheim & Neely*, 410 U.S. 512 (1973) ................................................................. 2

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ............................................................. 30

*Cazares v. 2898 Bagel & Bakery Corp.*, No. 18cv5953 (AJN) (DF), 2022 U.S. Dist. LEXIS 65113 (S.D.N.Y. Apr. 7, 2022) ............................................................................. 13

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008) ............................................ 29, 30

*Chui v. Am. Yuexianggui of Li LLC,* No. CV 18-5091 (SJF) (AKT), 2020 U.S. Dist. LEXIS 117296 (E.D.N.Y. July 2, 2020) ............................................................................. 26

*Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002)............................ 7, 8

*Clarke v. City of New York*, 2008 U.S. Dist. LEXIS 47683 (S.D.N.Y. June 16, 2008) .............. 11

*Cook v. United States*, 109 F.R.D. 81 (E.D.N.Y. 1995) ......................................................... 24

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ...................... 7, 8

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) .................................. 8

*Cucu v. 861 Rest. Inc.*, No. 14 Civ. 1235, 2017 U.S. Dist. LEXIS 84196 (S.D.N.Y. June 1, 2017) .................................................................................................................... 8

*Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628 (S.D.N.Y. 2007)............................. 19, 20, 25

*D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)................................................................. 29

*Dumitrescu v. Mr. Chow Enters., Ltd.*, No. 07 Civ. 3601, 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008)....................................................................................... 21

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007)..................... passim

*Foster v. Food Emporium*, No. 99 Civ, 3860, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000) ................................................................................................................... 24

*Gamero v. Koodo Sushi Corp.,* 272 F. Supp. 3d 481 (S.D.N.Y. 2017) ................................... 15

*Garcia v. Chipotle Mexican Grill, Inc.,* 2016 U.S. Dist. LEXIS 153531 (S.D.N.Y. Nov. 3, 2016) ................................................................................................................ 2, 16

*Garriga v. Blonder Builders Inc.,* No. CV 17-497 (JMA) (AKT), 2018 U.S. Dist. LEXIS 171887 (E.D.N.Y. Sep. 28, 2018)................................................................... 16, 26, 27, 29

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003) ...... 21, 25, 27

*Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013) ................................................................................................................... 29

*Gonzalez v. Jane Roe Inc.*, 2015 U.S. Dist. LEXIS 103370 (E.D.N.Y. July 15, 2015) ................ 6

*Guevara v. Fine & Rare Operations LLC,* No. 20-CV-5330 (BCM), 2022 U.S. Dist. LEXIS 4833 (S.D.N.Y. Jan. 10, 2022)........................................................................................ 26

*Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340 (E.D.N.Y. 2012) ................... 18

*Hallissey v. Amer. Online, Inc.*, No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008) ............................................................................................................ 20

*Hamadou v. Hess Corp*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) .......................................... 2

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651 (S.D.N.Y. 2013)................................................ 18

*Han v. Sterling Nat'l Mortgage Co., Inc.*, No. 09-cv-5589, 2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. Sept. 14, 2011).................................................................................................. 28

*Harhash v. Infinity West Shoes, Inc.*, No. 10 Civ. 8285, 2011 U.S. Dist. LEXIS 96880 (S.D.N.Y. Aug. 24, 2011) ......................................................................................................... 18

*He v. Home on 8th Corp.*, No. 09 Civ 5630, 2014 WL 3974670 (S.D.N.Y. Aug. 13, 2014)........ 8

*Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007) ............................................................................................................... 7

*Hernandez v. JRPAC Inc.*, 2016 U.S. Dist. LEXIS 75430 (S.D.N.Y. June 9, 2016) .................. 15

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997)......................................... 20, 22, 25

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)..................................................... 23, 24

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)..................... 19, 20, 24

*In re Domino's Pizza Inc.*, No. 16-cv-6274 (AJN), 2018 U.S. Dist. LEXIS 51393, 2018 WL 1587593 (S.D.N.Y. Mar. 27, 2018) ....................................................................................... 14

*Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015)........................................ 7, 8

*Iriarte v. Redwood Deli & Catering, Inc.*, No. 07 Civ. 5062, 2008 WL 2622929 (E.D.N.Y. June 30, 2008) ............................................................................................................................ 17

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ............................................ 28, 29

*Jason v. Falcon Data Com, Inc.*, No. 09 Civ 03990, 2011 WL 2837488 (E.D.N.Y. 2011)........ 17

*Jing Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642 (WFK) (ST), 2016 U.S. Dist. LEXIS 163171 (E.D.N.Y. Nov. 23, 2016)........................................................................................ 15

*Juarez v. 449 Restaurant, Inc.*, No. 13 Civ. 6977, 2014 WL 3361765 (S.D.N.Y. July 2, 2014) ... 5

*Kemper v. Westbury Operating Corp.*, No. 12 Civ. 895, 2012 WL 4976122 (E.D.N.Y. Oct. 17, 2012) .................................................................................................................................. 29

*Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) ................................................................................................... 17, 21

*Khamsiri v. George. & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265, 2012 WL 1981507 (S.D.N.Y. June 1, 2012)......................................................................................................... 17

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)..................................................... 10

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008) .................................. 22

*Lee v. ABC Carper & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006)....................................... 20, 25, 27

*Lixin Zhao v. Benihana, Inc.*, No. 01 Civ. 1297, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) .............................................................................................................................. 17, 21

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) ............................ 3, 22

*Machuca v. Villaggio Catering Corp.*, No. 14 Civ. 3508, Dkt. No. 43 (E.D.N.Y. Jan. 12, 2015). 5

*Martin v. Sprint/united Mgmt. Co.*, No. 15 CIV. 5237, 2016 U.S. Dist. LEXIS 352, 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016)............................................................................................... 26

*Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) .................................................................................................................................. 21

*Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 WL 3240472 (S.D.N.Y. Nov. 29, 2005) .......................................................................................................................................... 20, 21

*McGlone v. Contract Callers*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012)......................................... 29

*Mendez v. Int'l Food House Inc.*, 13 Civ. 2651, 2014 U.S. Dist. LEXIS 121158, 2014 WL 4276418 (S.D.N.Y. Aug. 28, 2014) ......................................................................................... 9

*Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178 (S.D.N.Y. 2007)....................... 19, 20, 22

*Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54 (E.D.N.Y. 2011)............................................... 18

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) ................................................... 30

*Padilla v. Manlapaz,* 643 F. Supp. 2d 302 (E.D.N.Y. 2009)....................................................... 10

*Patton v. Thomson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) .................................... 24, 25, 26

*Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 0002, 2008 U.S. Dist. LEXIS 81082 (S.D.N.Y Oct. 8, 2008) ............................................................................................................................ 18

*Qing Tian Zhuo v. Jia Xing 39th Inc.*, No. 14-cv-2848 (SHS), 2015 U.S. Dist. LEXIS 43062, 2015 WL 1514950 (S.D.N.Y. Apr. 1, 2015) .................................................................. 3

*Quiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89 (S.D.N.Y. 2020) ...................................... 26

*Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998) .............................................. 20

*Reyes v. Sofia Fabulous Pizza Corp.*, No. 13 Civ. 7549, 2014 U.S. Dist. LEXIS 188734 (S.D.N.Y. Apr. 7, 2014) ................................................................................................... 7, 9

*Romero v. Anjdev Enterps., Inc.*, No. 14 Civ. 457 (AT), 2017 U.S. Dist. LEXIS 19275, 2017 WL 548216 (S.D.N.Y. Feb. 10, 2017) ...................................................................................... 15

*Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75, 2013 U.S. Dist. LEXIS 9739 (S.D.N.Y. Jan. 10, 2013) ................................................................................................................... 18

*Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007) .................... 25

*Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006) .............................................................................................................. 17

*Toure v. Cent. Parking sys.*, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sep. 28, 2007) ... 20, 22, 24

*Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665 (Jun. 5, 2017) ................................. 6

*Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 U.S. Dist. LEXIS 60158, 2016 WL 2658172 (S.D.N.Y. May 5, 2016) .................................................................................... 26

*Williams v. Bier Int'l, LLC*, 2015 U.S. Dist. LEXIS 94609 (S.D.N.Y. July 21, 2015) .......... 10, 11

*Winfield v. Citibank, N. Am.*, 843 F. Supp. 2d 397 (S.D.N.Y. 2012). ...................................... 18

*Yanza v. ST Group LLC*, No. 16 CV 8834, at Dkt. No. 60 (S.D.N.Y. Aug. 17, 2017) ................. 2

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005) ........................................... 22

*Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008) .................................. 7, 15

## STATUTES

29 U.S.C. § 202 .............................................................................................................. 29

29 U.S.C. § 203(m) .................................................................................................... 7, 8, 14

29 U.S.C. § 203(r) ............................................................................................................. 2

29 U.S.C. § 206 .............................................................................................................. 29

29 U.S.C. § 207 ......................................................................................................... 10, 29

29 U.S.C. § 216 ........................................................................................................ passim

29 U.S.C. § 255 .............................................................................................................. 24

29 U.S.C. § 256 .............................................................................................................. 24

## RULES

Fed. R. Civ. P. 23 ...................................................................................................... 21, 24

## REGULATIONS

12 N.Y.C.R.R. § 142-2.2 .................................................................................................. 10

12 N.Y.C.R.R. § 146-1.3 ............................................................................................... 6, 12

12 N.Y.C.R.R. § 146-1.4 .................................................................................................. 12

12 N.Y.C.R.R. § 146-2.9 .................................................................................................... 9

12 N.Y.C.R.R. § 146-3.3 .................................................................................................... 9

12 N.Y.C.R.R. § 146-3.7 .............................................................................................. 15, 16

29 C.F.R. § 10.28 ................................................................................................ 10
29 C.F.R. § 516.27(a) .......................................................................................... 15
29 C.F.R. § 531.3(a) ............................................................................................ 14
29 C.F.R. § 531.3(b) ........................................................................................... 14
29 C.F.R. § 531.31 .............................................................................................. 15
29 C.F.R. § 531.59 ............................................................................................ 7, 9
29 C.F.R. § 531.60 .............................................................................................. 12
29 C.F.R. § 770.221 .............................................................................................. 4
29 C.F.R. § 779.206 .............................................................................................. 3

## I.    PRELIMINARY STATEMENT

On June 16, 2022, Plaintiff SANDY YUWONO ("Plaintiff") filed a Class and Collective Action Complaint against POKE FIDI LLC d/b/a CHIKARASHI FIDI, POKE NYC LLC d/b/a CHIKARASHI CHINATOWN, POKE NOMAD LLC d/b/a CHIKARASHI NOMAD, CANAL ARCADE LLC d/b/a NAKAJI, JOHN DOE CORPORATION d/b/a KONO, MICHAEL JONG LIM, IVY TSANG a/k/a IVY CHU, JONATHAN CHU, and SELWYN CHAN ("Defendants"), seeking: (1) unpaid minimum wages due to an invalid tip credit; (2) unpaid wages, including overtime, due to time-shaving; (3) unpaid tip compensation due to an invalid tip pooling policy; (4) unlawfully retained gratuities; (5) compensation for improperly deducted meal credits; (6) unpaid spread of hours premiums; (7) liquidated damages; and (8) attorney's fees and costs, under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

Plaintiff brought the FLSA claims on behalf of himself and all current and former non-exempt front-of-house employees, who were employed within the last six (6) years ("Covered Employees") by Defendants. By this motion, Plaintiff seeks the relief attached in the Proposed Order attached as **Exhibit 1** to the Notice of Motion.

## II.    DEFENDANTS' RESTAURANTS OPERATE AS A SINGLE INTEGRATED ENTERPRISE

Defendants own and operate five (5) restaurants in New York City as a single integrated enterprise under the common control of Defendants at the following locations:

a) Chikarashi Financial District ("Poke Fidi"), 38 Rector Street, New York, NY 10006;

b) Chikarashi Chinatown ("Poke NYC"), 227 Canal Street, New York, NY 10013;

c) Chikarashi Nomad ("Poke Nomad"), 1158 Broadway, New York, NY 10001;

d) Nakaji (a.k.a. "Canal Arcade"), 48A Bowery, New York, NY 10013; and

e) Kono, 46 Bowery, New York, NY 10013 (collectively, the "Restaurants").

Defendants operate the Restaurants as a single integrated enterprise within the meaning of the FLSA. The FLSA provides that the term, "[e]nterprise means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities whether performed in one or more establishments . . . ." 29 U.S.C. § 203(r). The three elements to be satisfied are (1) related activities, (2) common control and (3) common business purpose. *See Brennan v. Arnheim & Neely*, 410 U.S. 512, 518 (1973); *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998) (Sotomayor, J.)).

A merits-level determination of this issue is inappropriate and not necessary to certify an enterprise-wide collective action. *See, e.g., Yanza v. ST Group LLC*, No. 16 CV 8834, at Dkt. No. 60 (S.D.N.Y. Aug. 17, 2017) (in granting preliminary conditional certification of employees at three restaurants, finding the plaintiff's declaration and preliminary evidence to be "sufficient, when taken as true, to satisfy the modest factual showing" for enterprise-wide conditional certification); *Garcia v. Chipotle Mexican Grill, Inc.,* 2016 U.S. Dist. LEXIS 153531 at *23-25 (S.D.N.Y. Nov. 3, 2016) ("The fact that Plaintiff worked at only five Chipotle locations [out of sixty] is not dispositive of the issue of citywide certification—what matters is whether he and employees at those restaurants were 'similarly situated' with respect to the FLSA violations alleged in the complaint.") (internal citations and quotation marks omitted); *Hamadou v. Hess Corp*, 915 F. Supp. 2d 651 (S.D.N.Y. 2013) (holding, notwithstanding that the plaintiffs only worked at two of the defendants' gas stations, that "Plaintiffs have made an adequate factual showing to warrant certification of the two Hess 'territories' that encompass the Queens and Bronx stations, each of which includes between 10-13 stations"); *Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901, 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007) (granting nationwide conditional certification for all assistant store managers of merchandising business

based on the declaration of one plaintiff); *Qing Tian Zhuo v. Jia Xing 39th Inc.*, No. 14-cv-2848 (SHS), 2015 U.S. Dist. LEXIS 43062, 2015 WL 1514950, at *3-4 (S.D.N.Y. Apr. 1, 2015) (certifying collective action across multiple restaurant locations based on one employee's affidavit testifying to common ownership and personal conversations with employees who rotated among different locations); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007) ("At this procedural state, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. … Thus, any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification.").

The evidence discussed below is more than sufficient to warrant conditional certification of Covered Employees across all of Defendants' Restaurants at this preliminary stage of the litigation.

## A.  <u>RELATED ACTIVITIES</u>

"Related activities" are those which are "the same or similar," or are "auxiliary or service activities." *Archie*, 997 F. Supp. at 525 (quoting 29 C.F.R. § 779.206(a)). Auxiliary and service activities include "all activities which are necessary to the operation and maintenance of the particular business, such as warehousing, bookkeeping, or advertising." *Id*. Business entities that provide "mutually supportive services to the substantial advantage of each entity" are operationally interdependent and may be treated as a single enterprise under the FLSA. *Id*.

Here, during Plaintiff's employment, "related activities" is demonstrated because:

a) Defendants advertised the Restaurants' menus and offerings on one (1) single website.  *See* **Exhibit B**.

b) Defendants provided one (1) single email address for customers to contact Restaurant personnel. *See* **Exhibit C**.

3

c) Customers only needed to access one (1) single web page in order to schedule a dining reservation or to make a reservation for a larger private dining event. ***See* Exhibit D**.

d) Defendants publicly advertised their "team" on one (1) single webpage, demonstrating that the Restaurants shared the same General Manager. ***See* Exhibit E**. Moreover, General Manager Louis Andia corresponded with employees at all of Defendants' Restaurants identifying himself as the General Manager for Defendants' Restaurants. ***See* Exhibit E1**.

e) Defendants already produced an Employee List for "Poke Fidi," "Poke NYC;" "Poke Nomad:" and "Nakaji" (a.k.a. "Canal Arcade"). This list confirms that employees were transferred between all of the Restaurant locations. ***See* Exhibit F**.

f) The same individuals set the wage policies at Defendants' Restaurants and implemented the payroll for all locations. *See* Declaration of Sandy Yuwono ("Yuwono Decl.") ¶ 3.

Since the foregoing facts demonstrate "mutually supportive services to the substantial advantage of each entity," the first prong is satisfied.

**B.  COMMON CONTROL**

"Control" is the power to "direct, restrict, regulate, govern, or administer the performance" of the related activities, and "common control" exists "where the performance of the described activities is controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Archie*, 997 F. Supp at 526 (quoting 29 C.F.R. § 770.221).

Here, as noted already, Defendants' Restaurants share the same General Manager who oversees the Restaurants and manages the staff. ***See* Exhibits E**, and **E1**. Additionally, each of the Restaurants is under the common control of the Individual Defendants, who manage the Restaurants' operations and finances. ***See* Exhibit G**. As shown on **Exhibit G**, each of the Individual Defendants Michael Jong Lim, Ivy Tsang (a.k.a. Ivy Chu), Jonathan Chu, and Selwyn Chan, are identified as being the owners and the Restaurants' higher level management team.

### C.  **COMMON BUSINESS PURPOSE**

The common business purpose prong is satisfied because as demonstrated above, Defendants collectively operated the Restaurants, and the Restaurants had the same managers, shared employees, and engaged in the same business activities.

The foregoing evidence demonstrates that all Corporate Defendants at all locations in New York City state have (1) related activities, (2) common control, and (3) common business purpose. Because Defendants operate their Restaurants as a single integrated enterprise, this conditional collective certification is appropriate for employees at all of Defendants' Restaurants regardless of the location where they worked. *See Machuca v. Villaggio Catering Corp.*, No. 14 Civ. 3508, Dkt. No. 43 (E.D.N.Y. Jan. 12, 2015) (granting plaintiffs' motion for FLSA collective certification for different stores based on common ownership, logo, menu and website on which defendants advertise all locations); *Juarez v. 449 Restaurant, Inc.*, No. 13 Civ. 6977, 2014 WL 3361765, at *4-5 (S.D.N.Y. July 2, 2014) (inferring that unlawful pay policies implemented at one store extended to other locations because all stores were run as an "integrated enterprise" with common ownership and same menu, décor and website).

## III.    **PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS**

From October 25, 2021 through January 1, 2022, Plaintiff SANDY YUWONO ("Plaintiff") was employed by Defendants as a server at Defendants' restaurant Chikarashi Isso ("Poke Fidi") located at 38 Rector Street, New York, NY 10006. *See* Yuwono Decl. ¶ 1.

Plaintiff brings allegations on behalf of himself and Covered Employees to resolve Defendants' unlawful policies of: (1) failing to pay proper minimum and overtime wages, due to an invalid tip credit; (2) failing to pay wages, including overtime, due to time-shaving; (3) failing to pay tip compensation due to an invalid tip pooling policy; (4) unlawfully retaining gratuities; and (5) failing to compensate for improperly deducting meal credits.

Based on Plaintiff's personal observations and conversations with co-workers, all other workers employed by Defendants were similarly subjected to the above-mentioned violations. Yuwono Decl. ¶¶ 5-19. Moreover, Defendants' production of a sampling of Covered Employees' wage records also confirms that these violations applied to all Covered Employees.

A. **FAILURE TO COMPENSATE PLAINTIFF AND COVERED EMPLOYEES THEIR WAGES DUE TO DEFENDANTS' INVALID TIP CREDIT DEDUCTIONS**

Under the FLSA, an employer may be permitted to compensate an employee on a tip credit basis under certain circumstances and adhering to certain rules. However, because Defendants improperly deducted a tip credit allowance from Plaintiff and Covered Employees, Defendants failed to compensate employees their proper wages in violation of the FLSA.

The FLSA dictates limited conditions that allow an employer to compensate employees on a tip credit basis, "[a]n employer may take a credit towards the basic minimum hourly rate" only if certain preconditions are met. *See* 12 N.Y.C.R.R. § 146-1.3 (effective January 1, 2011); *see also Gonzalez v. Jane Roe Inc.*, 2015 U.S. Dist. LEXIS 103370, at *6 n.6 (E.D.N.Y. July 15, 2015). (holding that "employer may receive the benefit of the tip credit under the NYLL only if the employer gives proper notice").

Here, Defendants improperly compensated their employees on a tip credit basis, but Defendants failed to meet the statutory requirements to claim a tip credit.

i. *Defendants Failed to Properly Notify Plaintiff and Covered Employees as Required under the FLSA*

The FLSA provides that every employer who is not exempt from its coverage must pay any employee engaged in commerce a minimum hourly wage. *See* 29 U.S.C. § 206(a)(1). *Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 672 (Jun. 5, 2017). Under the FLSA, an employer is allowed to pay tipped employees at an hourly rate below the minimum wage if the

employee's wages and tips, added together, meet or exceed the minimum wage. *See* 29 U.S.C. § 203(m). To be eligible for the tip credit set forth in Section 203(m), however, the employer must satisfy two conditions: "(1) inform the employee of the tip credit provision of the FLSA, and (2) permit the employee to retain all of the tips the employee receives." *Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011) (citing *Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 228-29 (S.D.N.Y. 2002)). Unless both requirements are satisfied, the tip credit is invalid and employers are liable for unpaid minimum wage under the FLSA. *See Heng Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770, at *47 (S.D.N.Y. Feb. 1, 2007) (an employer "may not take a tip credit unless it complies strictly with both statutory requirements.").

The first requirement, which is also referred to as the notice requirement, "requires employers who wish to claim tip credits toward the wages of their tipped employees to 'inform[] its tipped employees in advance of the employer's use of the tip credit' by providing the employee with notice of the base cash wage and amount of tip credit increase, as well as notice 'that all tips received by the tipped employee must be retained by the employee . . . .'" *Reyes v. Sofia Fabulous Pizza Corp.*, 2014 U.S. Dist. LEXIS 188734, at *23 (S.D.N.Y. Apr. 7, 2014) (citing 29 C.F.R. § 531.59 (b)). *See also Yu G. Ke*, 595 F. Supp. 2d at 254 ("the employer must first notify the employees of . . . the employer's intention to take the tip credit"). Additionally, "the employer must inform employees that the tip credit may not exceed 'the value of the tips actually received by an employee.'" *Id.* (citing 29 U.S.C. § 203(m)). "This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (collecting cases). *See* 29 C.F.R. § 531.59 (b) ("tip credit shall not apply to any employee who has not been informed of these requirements");

*Copantitla*, 788 F. Supp. 2d at 287 (the "notice requirement is a firm one . . . [because] Congress expressly required notice as a condition of the tip credit[.]"). "Even if the employee receives tips at least equivalent to the minimum wage," the notice provision must be satisfied. *Cucu v. 861 Rest. Inc.*, 2017 U.S. Dist. LEXIS 84196, at *7 (S.D.N.Y. June 1, 2017) (citing *Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. Sept. 13, 2002)).

The employer "bear[s] the burden of showing that [it] satisfied the FLSA's notice requirement by, for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." *Inclan,* 95 F. Supp. 3d at 497 (citing *He v. Home on 8th Corp.*, 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014)). *See Copantitla*, 788 F. Supp. 2d at 288 (holding that defendants failed to satisfy the statutory tip credit notice requirement because "nowhere [did the defendants testify that the defendant corporation] told its employees that it intended to use tips to satisfy its minimum wage obligations."). "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage . . . ." *Inclan,* 95 F. Supp. 3d at 497 (internal quotation omitted). Further, "where the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the nonmoving party's case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).

Here, Defendants failed to inform Plaintiff about his tipped compensation, as required under the FLSA. As shown by Plaintiff's wage notice form, Defendants do not list a tip credit deduction, or that the tip credit may not exceed the value of the tips actually received, as required under the FLSA. *See* **Exhibit H**. Plaintiff attests that, similar to him, Covered Employees were also not properly informed of Defendants' tip credit. *See* Yuwono Decl. ¶¶ 16-19. Defendants,

therefore, were not entitled to take a tip credit under the FLSA, as they failed to inform employees of the statutory requirements related to the tip credit, or the amount of the credit that's being claimed for each pay period. *See Reyes*, 2014 U.S. Dist. LEXIS 188734, at \*23 (citing 29 C.F.R. § 531.59 (b). Yet, despite this, Defendants still paid Plaintiff and Covered Employees at an hourly tip credit rate. For Plaintiff this hourly tip credit rate was $10, as shown on his wage notice form (**Exhibit H**) and for others, it was either $10, or $13.75. *See* **Exhibit I**. Defendantas' compensation of Covered Employees is also shown on Defendnats' Employee lists for Nakaji a.k.a "Canal Arcade," Poke Fidi, Poke NYC, and Poke Nomad. *See* **Exhibit F**.

ii. *Defendants Routinely Required Plaintiff and Covered Employees to Perform Non-tipped Activities for More Than 20% of Their Shifts*

Another precondition that an employer must meet to pay its tipped employees at a tipped minimum wage rate instead of a minimum wage rate, is ensuring that the employees who are affected by the tip credit are not engaging in substantial amount of non-tipped activities, unless such employees are being compensated at a full minimum wage rate for the non-tipped activities.

"Under the FLSA, tipped employees who spend a substantial amount of time…engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." *Mendez v. Int'l Food House Inc.*, 13 Civ. 2651, 2014 U.S. Dist. LEXIS 121158, 2014 WL 4276418, at \*3 (S.D.N.Y. Aug. 28, 2014) (internal quotation marks and citation omitted). Similarly, under the NYLL, "if a tipped employee performs non-tipped work for (a) two hours or more, or (b) for more than 20 percent of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day." 12 N.Y.C.R.R. § 146-2.9; *see also* 12 N.Y.C.R.R. § 146-3.3 ("an employee may not be classified as a service employee on any day in which she or he has been assigned to work at an occupation in

which tips are not customarily received for two hours or more or for more than 20 percent of her or his shift, whichever is less"); 29 C.F.R. § 10.28(b)(2)(i).

Here, Defendants routinely required Plaintiff and Covered Employees to perform excessive non-tipped activities for over twenty percent (20%) of their regular shifts. *See* Yuwono Decl. ¶ 10. Here, Plaintiff was required to perform for at least 25% of his shift porter and cleaning activities such as polishing silverware and glassware, dishwashing, cleaning the premises including the dining area, bathrooms, and counters, cleaning windows, among others. Yuwono Decl. ¶ 10. In accordance with the FLSA, the extent of non-tipped work, and the clear substance of the work, which is clearly not in advance of Plaintiff's tipped employment, invalidates the tip credit. The requirement and expectation of tipped employees engaging in extensive non-tipped work was directed towards all Covered Employees. Yuwono Decl. ¶ 10.

Defendants violated the FLSA requirements by requiring excessive non-tipped work, and therefore, they were not permitted to take tip credit from Plaintiff and Covered Employees. *See Padilla v. Manlapaz,* 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009). As such, a tip-credit was invalid, and consequently, Plaintiff and Covered Employees experienced wage violations repeatedly throughout their employment with Defendants.

**B. <u>FAILURE TO COMPENSATE PLAINTIFF AND COVERED EMPLOYEES THE COVERED EMPLOYEES THE PROPER WAGES, INCLUDING OVERTIME, DUE TO TIME-SHAVING</u>**

"The FLSA and the NYLL require employers to pay employees one and one-half times their regular wage for any hours worked over forty in a week." *Williams v. Bier Int'l, LLC*, 2015 U.S. Dist. LEXIS 94609, at *3-4 (S.D.N.Y. July 21, 2015) (citing 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated." *Id*. (citing *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 361 (2d Cir. 2011)). A

plaintiff must "'produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. … A plaintiff can meet this burden through "estimates based on his own recollection. … The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

Employers have to compensate their employees for every hour worked. "The FLSA does not define 'work,' but the Supreme Court has interpreted that word to mean 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Clarke v. City of New York*, 2008 U.S. Dist. LEXIS 47683, *8 (S.D.N.Y. June 16, 2008)

Here, Plaintiff was required to continue working for Defendants' benefit outside of his scheduled hours. Yuwono Decl. ¶ 5-7. Defendants instructed Plaintiff to begin working, on a daily basis, fifteen minutes before his scheduled shift. However, Plaintiff was not compensated for this time worked. Similarly, Defendants required Plaintiff, on a daily basis, to continue working until 1:00 a.m. Thus, Plaintiff was working for another three hours after his schedule finished, but without compensation. *Id*. Similarly, Covered Employees were instructed to work before and after their scheduled shifts without compensation. Yuwono Decl. ¶ 5-7. This unlawful time-shaving policy resulted in a failure to compensate Plaintiff and Covered Employees the wages for all their worked hours, including overtime premiums.

### i.   *Defendants' Improper Calculation of Overtime Rates*

Defendants' production confirms that Plaintiff and Covered Employees were not properly compensated for overtime hours due to Defendants' miscalculation of their overtime rates. For example, Defendants improperly calculated the hourly overtime rates for tipped employees as 1.5 times their hourly tip credit rates, resulting in Defendants compensating overtime at $15 per

hour. *See* **Exhibits H**, and **I**. Although **Exhiit I** contains only a sampling of wage records for Covered Employees, Defendants' improper calculation of overtime clearly applied to all Covered Emploees at all of their five (5) Restaurants. Specifically, as shown on Defendants' Employee list, which contains each employee's regular and overtime pay rates, Defendants compensated all tipped employees at an overtime rate of $15 per hour, regardless of their actaul tip credit rate. *See* **Exhibit F**. For employees whose tip credit rate is $10 per hour, the proper tip credit overtime rate is $17.50, calculated as follows: $15.00 (minimum wage) x 1.5 (overtime premium) – (tip credit). *See* 29 C.F.R. § 531.60, 12 N.Y.C.R.R. § 146-1.3, 4.

At times, Defendants also paid overtime hours at straight time rates. *See* **Exhibit I**. Specifically, for the pay date 1/14/2022, Defendants compensated Edgar Cai at an hourly rate of $14.50 for all regular and overtime hours worked; and for the pay date 6/21/19, Defendants paid him at an hourly rate of $13.75 for all regular and overtime hours. *See* pages 7 and 8, **Exhibit I**. This is an improper calculation of his hourly overtime pay rate, and as such invalidates Defendants' tip credit since any notice they provided included the wrong overtime rate. For employees paid at an hourly tip credit rate of $13.75, the proper hourly tip credit overtime rate is $21.25; and for employees paid at an hourly tip credit rate of $14.50, the proper hourly overtime tip credit rate is $22.00. This is because a tipped employee's tiped overtime rate is calculaed as follows, $15.00 (minimum wage) x 1.5 (overtime premium) – (tip credit). *See* 29 C.F.R. § 531.60, 12 N.Y.C.R.R. § 146-1.3, 4. Due to the foregoing, Defendants' tip credit is invalid for Plaintiff and Covered Employees.

    ii.   *Defendants' Improper Meal Break Deductions*

Defendants failed to compensate Plaintiff and Covered Employees wages, including overtime, due to automatically deducting meal breaks. Yuwono Decl. ¶ 5-9. Plaintiff was required to work throughout his shifts without any breaks. Despite this, Defendants automatically

deducted thirty (30) minutes per shift from Plaintiff's wages as a meal break, resulting in unpaid regular and overtime wages of approximately three (3) hours per week. *Id.* Covered Employees were similarly subjected to automatic meal break deductions, but required to work throughout their shifts, resulting in unpaid regular and overtime wages. Yuwono Decl. ¶ 8-9.

For example, Defendants' time records show that during the week of 11/15/21 – 11/21/21, Plaintiff clocked in for a total of <u>26.60</u> hours, but Defendants compensated Plaintiff for only <u>24.60</u> hours. *See* **Exhibit H**. Defendants' improper time shaving practice is even more glaring during the pay period from 12/20/21 – 12/26/21. Plaintiff's clock ins that week are:

- 12/20/21; 11:03 am - 4:38 pm; 5.58 hours
- 12/21/21; 10:57 am - 2:04 pm; 3.12 hours; and 3:58 pm - 9:43 pm; 5.75 hours
- 12/22/21; 10:59 am - 2:40 pm; 3.68 hours; and 3:54 pm - 9:27 pm; 5.55 hours
- 12/23/21; 3:51 pm - 10:07 pm; 6.27 hours
- 12/24/21; 4:14 pm - 9:13 pm; 4.98 hours

*See* **Exhibit H.**

As shown above, Plaintiff worked a total of <u>34.93</u> hours, but Defendants compensated Plaintiff for only <u>32.47</u> hours. *See* **Exhibit H**. Defendants did not compensate Plaintiff for <u>2.46</u> hours that pay period. Thus, even when Plaintiff clocked out for unpaid breaks as shown on 12/21/21 and on 12/22/21, Defendants still automatically deducted half hour per shift on those days. *Id*. Defendants' improper meal break time shaving could not be more obvious.

### C. <u>FAILURE TO COMPENSATE PLAINTIFF AND COVERED EMPLOYEES TIPPED COMPENSATION DUE TO UNLAWFULLY RETAINED GRAUITIES</u>

"No employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." *Cazares v. 2898 Bagel & Bakery Corp.*, No. 18cv5953 (AJN) (DF), 2022 U.S. Dist. LEXIS 65113, at *29 (S.D.N.Y. Apr. 7, 2022) (quoting

*In re Domino's Pizza Inc.*, No. 16-cv-6274 (AJN), 2018 U.S. Dist. LEXIS 51393, 2018 WL 1587593, at *5 (S.D.N.Y. Mar. 27, 2018)).

Here, Defendants did not distribute all tips that customers left to the employees. Yuwono Decl. ¶ 11-12. Instead, Defendants first distributed the tips among themselves, and in a blurry practice, divided the remaining tips by the number of tipped employees **on record** and paid the tipped employees **working**, further retaining the remainder. Yuwono Decl. ¶ 11-12.  As a result, each employee received a reduced number of tips. However, even when this division was calculated as to all tipped employees, only the employees that were scheduled received their portion of the tips. Yuwono Decl. ¶ 11-12. The remainder was never distributed and presumably, Defendants kept it. Yuwono Decl. ¶ 11-12. For example, if the remainder of tips was $100 and there were 10 tipped employees on the records, Defendants divided $100/10, equaling to $10 per tipped employee. However, if that day were only 2 tipped employees working, Defendants would distribute $10 to each employee scheduled and the remainder $80 just disappeared. "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit" 29 U.S.C. § 203(m).

Defendants retaining all tips that were to be distributed among their tipped employees resulted in an improper tip credit compensation. Similarly, covered employees suffered from Defendants' unlawful retention of gratuities. Yuwono Decl. ¶ 10-12.

### D. <u>FAILURE TO COMPENSATE PLAINTIFF AND COVERED EMPLOYEES DUE TO AUTOMATIC MEAL CREDIT DEDUCTIONS</u>

By law, an employer may claim a meal credit if it is properly documented. *See* 29 U.S.C. § 203(m). The amount of the credit is limited to the "actual cost to the employer." 29 C.F.R. § 531.3(a); *see also* 29 C.F.R. § 531.3(b). Moreover, the employer  must retain records

documenting the out-of-pocket costs that it incurred, 29 C.F.R. § 516.27(a), and bears the burden of proving both the actual costs and their reasonableness. *Yu G. Ke v. Saigon Grill, Inc*., 595 F. Supp. 2d 240, 257 (S.D.N.Y. 2008). Furthermore, "the federal regulation provides that a meal credit may only be taken *if it complies with federal and state law*. *See* 29 C.F.R. § 531.31 (emphasis added). Thus, any violation of federal or New York law relating to meal credits would suffice to establish an FLSA violation for the purposes of conditional certification. *Jing Fang Luo v. Panarium Kissena Inc.,* No. 15-CV-3642 (WFK) (ST), 2016 U.S. Dist. LEXIS 163171, at *18 (E.D.N.Y. Nov. 23, 2016). Therefore, Defendants are further required to satisfy the requirements of 12 N.Y.C.R.R. § 146-3.7 to validly claim a meal credit on Plaintiff's and Covered Employees' wages. 12 N.Y.C.R.R. § 146-3.7 requires that the meals that employers provide to employees to contain ""adequate portions of a variety of wholesome, nutritious foods and ... include at least one of the types of food from all four of the following groups: [i] fruits or vegetables; [ii] grains or potatoes; [iii] eggs, meat, fish, poultry, dairy, or legumes; and [iv] tea, coffee, milk or juice." Furthermore, "if an employer cannot prove that the meals it provided its employees satisfied these nutritional requirements, it cannot claim a meal credit. *Gamero v. Koodo Sushi Corp.,* 272 F. Supp. 3d 481, 502 (S.D.N.Y. 2017) (citing *Romero v. Anjdev Enterps., Inc.,* No. 14 Civ. 457 (AT), 2017 U.S. Dist. LEXIS 19275, 2017 WL 548216, at *10 (S.D.N.Y. Feb. 10, 2017)); *see also Hernandez v. JRPAC Inc.,* 2016 U.S. Dist. LEXIS 75430, at *27 (S.D.N.Y. June 9, 2016) (noting that 12 N.Y.C.R.R. § 146-3.7's "definition of meal ... contains mandatory language").

Here, Defendants failed to carry the burden of justifying meal credit retention under the federal regulations. Defendants proffered no records reflecting the cost of feeding Plaintiff and Covered Employees, no records demonstrating the credit claimed was "reasonable", and no

records showing that they provided Plaintiff and Covered Employees with the proper food groups pursuant to 12 N.Y.C.R.R. § 146-3.7.

Furthermore, Plaintiff never consumed the meals that Defendants provided. Yuwono Decl. ¶ 13-14. Thus, without consumption of meals, Defendants had no lawful justification to deduct from Plaintiff's payments any credit. As shown on **Exhibit H**, Defendants deducted from Plaintiff $10.80 per week. Similarly, Covered Employees were also subjected to the same unlawful meal credit deduction of $10.80 per week. *See* **Exhibit J**. As a result of these improper automatic deductions, Plaintiff and Covered Employees were not paid significant wages.

## IV.    PLAINTIFF IS SIMILARLY SITUATED AS COVERED EMPLOYEES

Through this Motion, Plaintiff seeks to represent a collective class of employees under the FLSA comprised of all non-exempt workers employed by Defendants in the last six (6) years. *See Garcia v. Chipotle Mexican Grill, Inc.*, 2016 U.S. Dist. LEXIS 153531, *27-29 (S.D.N.Y. Nov. 4, 2016) (this Court "conditionally certify[ing] this case as a citywide collective action . . . as to Plaintiff's time shaving claim under the FLSA."). *See Garriga v. Blonder Builders Inc.,* No. CV 17-497 (JMA) (AKT), 2018 U.S. Dist. LEXIS 171887 at *15–17 (E.D.N.Y. Sep. 28, 2018) (granting conditional collective certification for six (6) years from the date of the filing of the Complaint as "[m]ultiple courts in the Eastern District, including this Court have held that in some circumstances where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims.") (internal citations omitted).

At all relevant times, Plaintiff YUWONO worked as a server and was compensated on a tip credit basis. Yuwono Decl. ¶¶ 4. During his employment, Plaintiff suffered from unlawful deductions and uncompensated wages. Based on Plaintiff's personal observations and direct conversations with his co-workers, other workers employed by Defendants similarly suffered

from Defendants' common policy of unlawful tip credit deductions, unlawful gratuities retentions, time-shaving, and automatic meal credit deductions. Yuwono Decl. ¶¶ 3-15.

Plaintiff's allegations in the Complaint and Declaration are sufficient to make a modest factual showing to support conditional certification. *See, e.g.*, *Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 at *3 (S.D.N.Y. Aug. 9, 2007) (certifying collective action based upon complaint and one affidavit); *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318, at *8 (S.D.N.Y. Apr. 24, 2006) (certifying collective action based upon complaint and affidavits); *Jason v. Falcon Data Com, Inc.*, No. 09 Civ. 03990, 2011 WL 2837488 (E.D.N.Y. 2011) (certifying collective action based upon complaint and one affidavit); *Lixin Zhao v. Benihana, Inc.*, No. 01 Civ. 1297, 2001 U.S. Dist. LEXIS 10678, at *2 (S.D.N.Y. May 7, 2001) (certifying based upon one affidavit founded on plaintiff's "best knowledge").

Plaintiff's Declaration attests to Defendants' common policies of FLSA violations. Plaintiff's own experiences and best knowledge based on his personal observations and conversations shared with Covered Employees sufficiently support his assertions that Defendants uniformly applied unlawful employment policies and compensation schemes to all Covered Employees. Yuwono Decl. ¶¶ 3-18.

The declaration by itself should be sufficient because the Court at this point is not to ascertain its reliability, but whether it alleges a common policy of violations. Courts in the Second Circuit have regularly granted conditional certification on the same or similar grounds. *See Khamsiri v. George. & Frank's Japanese Noodle Rest. Inc*., No. 12 Civ. 265, 2012 WL 1981507 (S.D.N.Y. June 1, 2012) (granting conditional collective certification based on a single affidavit); *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07 Civ. 5062, 2008 WL 2622929 (E.D.N.Y. June 30, 2008) (conditional collective certification was granted based on only one

plaintiff declaration); *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 0002, 2008 U.S. Dist. LEXIS 81082, at *3–4 (S.D.N.Y Oct. 8, 2008) (granting conditional collective certification in a case with single plaintiff and no opt-ins). Here, Plaintiff has submitted a declaration with specific allegations regarding the manner in which he and Covered Employees were not paid for all their hours worked due to Defendants' invalid tip credit deduction, unpaid overtime compensation, and unlawfully retention of gratuities.

Plaintiff's allegations are not only supported by his own personal observations, but also by hearsay statements from Plaintiff's co-workers. Courts in this Circuit routinely afford weight to hearsay evidence in granting a plaintiff's motion for conditional certification. *Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75, 2013 U.S. Dist. LEXIS 9739, at *1 (S.D.N.Y. Jan. 10, 2013); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 644 (S.D.N.Y. 2013) (citing *Moore v. Eagle Sanitation Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011)). "Such approach is consistent with the purpose of conditional certification which is only a preliminary determination as to whether there is a sufficient showing to warrant notice being sent to the purported collective class." *Winfield v. Citibank, N. Am.*, 843 F. Supp. 2d 397, 402–03 (S.D.N.Y. 2012). *See also Harhash v. Infinity West Shoes, Inc.*, No. 10 Civ. 8285, 2011 U.S. Dist. LEXIS 96880, at *3–4 (S.D.N.Y. Aug. 24, 2011) (granting conditional class certification in part based on plaintiffs' statements that they had spoken with or knew of other sales employees of defendants' shoe stores that complained of the same compensation policies); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 352 (E.D.N.Y. 2012) (relying on the plaintiffs' allegations that three other delivery drivers for defendants' stores, who were identified only by first name, complained that they too were not paid for overtime hours).

## V.    ARGUMENT

To protect putative collective action members' rights and interests, and to promote judicial economy and effective case management, the Court should approve notice to be distributed to all Covered Employees. Notice is appropriate because the initial pleadings and preliminary evidence show that Plaintiff and all Covered Employees are similarly situated. They all worked as non-exempt employees, and Defendants (i) failed to compensate wages, including overtime, due to invalid tip-credit to Covered Employees working on a tipped basis, (ii) failed to pay overtime compensation, and (iii) failed to distribute tips to tipped employees. Thus, they "together were victims of a common policy or plan that violated the law." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 633 (S.D.N.Y. 2007) (internal quotation omitted).

### A. <u>THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION AND ORDER NOTICE</u>

#### i.    *The Standard for Conditional Certification and Notice Is Lenient*

"Courts generally determine the appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007). At the first stage, "courts utilize a lenient evidentiary standard in assessing whether the Plaintiff has presented sufficient evidence to demonstrate that a prospective class of member plaintiffs is similarly situated to the named Plaintiff." *Anglada v. Linens 'n Things, Inc.*, No. 06 Civ. 12901, 2007 U.S. Dist. LEXIS 39105, *11 (S.D.N.Y. Apr. 26, 2007); *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007). Under this lenient standard, a court will certify a class as a collective action and order notice to potential class members where "the plaintiff satisfies the minimal burden of showing that the similarly situated requirement is met" based on the pleadings and declarations. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007)

(internal quotation omitted). Upon certification, "[p]otential class members are then notified and provided with the opportunity to opt in to the action." *Id.*

To prevail on a motion for conditional certification, plaintiffs need only make a "modest factual showing" that they "are similarly situated *with respect to their allegations that the law has been violated.*" *Hallissey v. Amer. Online, Inc.*, No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387, at *6 (S.D.N.Y. Feb. 19, 2008) (internal quotation omitted; emphasis in original). Plaintiff must demonstrate that there is a "factual nexus between the [named plaintiff's] situation and the situation of other current and former [employees]." *Toure v. Cent. Parking sys.*, 2007 U.S. Dist. LEXIS 74056, at *6 (S.D.N.Y. Sep. 28, 2007) (internal quotation omitted; alterations in original); *see also Mentor*, 246 F.R.D. at 181; *Fasanelli*, 516 F. Supp. 2d at 321. Plaintiff meets the burden where putative collective members "together were victims of a common policy or plan that violated the law[.]" *Lee v. ABC Carper & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (internal quotation omitted), such as when they are all "employees of the same restaurant enterprise and allege the same types of FLSA violations." *Fasanelli*, 516 F. Supp. 2d at 322; *see also Toure*, 2007 U.S. Dist., LEXIS 74056, at *6 (stating that a plaintiff need only make a "modest factual showing" of similarity to satisfy the "relatively lenient evidentiary standard"); *Cuzco*, 477 F. Supp. 241 at 632-33 (plaintiff satisfied "minimal burden" by making "modest factual showing"); *Iglesias-Mendoza*, 239 F.R.D. at 367-68 ("[P]laintiffs can satisfy the 'similarly situated' requirement by making a modest factual showing . . . that they and potential plaintiffs together were victims of a common policy or plan that violated the law.") (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 WL 3240472, at *5 (S.D.N.Y. Nov. 29, 2005) (plaintiffs face only a very limited burden); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("The

burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are "similarly situated.").

Allegations in the pleadings and declarations are sufficient to make this modest factual showing. *See, e.g.*, *Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372, at *3 (S.D.N.Y. Aug. 9, 2007) (certifying collective action based upon complaint and one affidavit); *Lixin Zhao v. Benihana, Inc.*, No. 2001 WL 845000, at *2 (S.D.N.Y. May 7, 2001) (certifying based upon one affidavit founded on plaintiff's "best knowledge").

Unlike a Rule 23 class action, a § 216(b) collective action requires no "showing of numerosity, typicality, commonality and representativeness . . . as a pre-requisite to approval." *Mazur*, 2005 WL 3240472, at *4 (internal quotation omitted); *see also Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022, at *37 (S.D.N.Y. Aug. 17, 2005). The lenient standard for certification and notice under § 216(b) is justified because "[t]he ultimate determination regarding the merits of the case, and whether the class is properly situated – which requires a more 'stringent' inquiry – is made later in the litigation process, after more thorough discovery." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003); *see also Dumitrescu v. Mr. Chow Enters., Ltd.*, No. 07 Civ. 3601, 2008 U.S. Dist. LEXIS 49881, at *11 (S.D.N.Y. June 30, 2008) (noting that after discovery a court "review[s] the collective action certification more rigorously"). Plaintiff in this case has easily met the lenient standard for certification and notice.

    ii.    *The Underlying Merits of the Case Are Immaterial to the Determination of Conditional Certification and Notice*

Although Plaintiff is confident that he will successfully establish that Defendants failed to properly compensate the Covered Employees under the FLSA, a discussion of the underlying merits is unnecessary and inappropriate at this time: "[T]he standard in this circuit is clear; the

merits of plaintiffs' claim are not at issue in a motion for conditional certification." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008); *see also, e.g.*, *Mentor*, 246 F.R.D. at 181 (stating that "the merits of a plaintiffs claims need not be evaluated and discovery need not be completed to approve and disseminate a § 216(b) notice"); *Fasanelli*, 516 F. Supp. 2d at 322 ("To the extent that Defendants['] opposition relies on a detailed factual dispute about whether the Defendants maintained an 'illega1 off-the-clock' policy, 'illegal tip retention' policy, or fail to pay the minimum wage, that inquiry is misplaced as those issues go to the merits of the case."); *Toure*, 2007 U.S. Dist. LEXIS 74056, at *6 (stating that at the conditional certification stage "the merits of a plaintiff's claims need not be evaluated"); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (finding that "[t]he focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated'"); *Hoffmann*, 982 F. Supp. at 262 ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that, a definable group of 'similarly situated' plaintiffs can exist here."). Any merits-based argument "is an improper ground on which to base a denial of a motion to certify conditionally an FLSA collective action[.]" *Anglada*, 2007 U.S. Dist. LEXIS 39105, at *20. Rather, the proper inquiry is merely "whether the putative class alleged by Plaintiff is similarly situated based on the pleadings and any affidavits," *Fasaneilli*, 516 F. Supp. 2d at 321.

### iii.    Plaintiff Has Made the Modest Factual Showing Required for Conditional Certification

Here, Plaintiff has made far more than a modest factual showing that he is similarly situated to the Covered Employees. Plaintiff's detailed allegations in the Complaint and

declaration show that all Covered Employees were subject to the same compensation scheme. In his declaration, Plaintiff has named other individuals whom he has observed suffering from or spoken to regarding Defendants' illegal compensation policy, in addition to their own experiences. Yuwono Decl. ¶ 3. As such, if proven, these allegations establish that Defendants maintained illegal policies and practices that similarly affected all Covered Employees employed by Defendants.

If proven, these allegations establish that Defendants maintain illegal policies and practices that similarly affect all Covered Employees employed by Defendants. Therefore, Plaintiff has sufficiently shown that he is similarly situated to the Covered Employees.

## B. EARLY NOTICE TO 'SIMILARLY SITUATED' EMPLOYEES IS APPROPRIATE AND NECESSARY

The FLSA contemplates the maintenance of collective actions by similarly situated employees for an employer's violation of the provisions requiring payment of the minimum wage and overtime premium. 29 U.S.C. § 216(b). Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact" and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Braunstein v E. Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1978); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007). The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments arising from the same events and brought under the same laws.

i.   *Sending Expedited Notice to "Similarly Situated" Employees Fulfills the FLSA's Broad Remedial Purposes*

Expedited notice is critical in FLSA actions. Unlike absent class members in a Rule 23 class action, potential class members in an FLSA collective action must affirmatively consent (or "opt in") to be covered by the suit. 29 U.S.C. § 216(b). The statute of limitations continues to run on each individual's claim until he or she files a written consent form with the Court. 29 U.S.C. §§ 255, 256(b). To ensure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has held that courts have broad authority to facilitate early notice of the existence of the lawsuit to potential opt in plaintiffs. *Hoffmann-La Roche*, 493 U.S. at 170. Notice to putative class members should be given as soon as possible since, because of the statute of limitations, "potential plaintiffs may be eliminated as each day goes by." *Foster v. Food Emporium*, No. 99 Civ, 3860, 2000 U.S. Dist. LEXIS 6053, at *5 (S.D.N.Y. Apr. 26, 2000); *see also Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1995) ("Certainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.") (internal quotation marks and citation omitted). Thus, early distribution of a notice of pendency is crucial in an FLSA collective action.

The Court need not and should not delay the sending of notice until the completion of discovery. *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *8 (S.D.N.Y. Sept. 28. 2007) (ordering notice under 29 U.S.C. § 216(b) where only limited discovery had taken place); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The court is not obliged to wait for the conclusion of discovery before it certifies the collective action and authorizes notice."); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267-68 (E.D.N.Y. 2005) (ordering notice before full discovery in order to "facilitate[] the

[FLSA]'s broad remedial purpose . . . promot[e] efficient case management . . . [and] preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase of the case") (internal citations omitted); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (ruling that the Court need not "wait for defendant to complete its discovery before authorizing class notice. To the contrary, courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management"). In lieu of discovery, courts rely upon allegations in a complaint and employee declarations to determine whether plaintiffs and potential opt in collective members are similarly situated. *E.g.*, *Gjurovich v. Emmanuel's Marketplace*, 282 F. Supp. 2d 91, 104 (S.D.N.Y. 2003).

## C. DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS PROPER AND NECESSARY UNDER § 216(b)

It is appropriate for courts in collective actions to order the discovery of names and contact information of potential collective members. *See, e.g*., *Lee*, 236 F.R.D. at 202; *Fasanelli*, 516 F. Supp. 2d at 323-24; *Cuzco*, 477 F Supp. 2d at 637; *Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007); *Patton*, 364 F. Supp. 2d at 268. "Courts within this Circuit routinely grant plaintiff's motion to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action." *Anglada*, 2007 U.S. Dist. LEXIS 39105, at *22.

Plaintiff therefore requests that, in addition to entering an order granting conditional certification and approving Plaintiff's proposed notice, the Court order Defendants to produce within ten days of its Order a list of all Covered Employees in Excel format who were employed by Defendants at any point in the six years prior to the filing of the Complaint with the following information: names, titles, compensation rates, last known mailing addresses, email addresses, all

known telephone numbers and dates of employment. *See Garriga*, 2018 U.S. Dist. LEXIS 171887 at *31.

In the event that the mailings to Covered Employees are returned as undeliverable and Covered Employees' name and contact information are insufficient to effectuate notice, Plaintiff seeks the social security numbers of such Covered Employees so that Plaintiff's counsel can perform a skip trace to obtain a valid address. Based on Plaintiff's counsel's belief, a large percentage of consent forms are typically returned as undeliverable because of address changes, and the only way to locate these employees is to perform a search by social security number. Furthermore, Plaintiff is willing to execute a stipulation of confidentiality regarding the social security numbers produced to address any concerns regarding the Covered Employees' privacy. *See Patton*, 364 F. Supp. 2d at 268 (requiring defendant to produce social security numbers of putative collective members subject to entry of a confidentiality agreement).

### D. <u>DISTRIBUTION OF THE NOTICE BY MAIL, E-MAIL, AND TEXT MESSAGE IS FAIR AND PROPER</u>

Courts in the Second Circuit have permitted dissemination of notice by mail, email, and text message "where, as here, the nature of the employer's business facilitated high turnover rate among employees." *Guevara v. Fine & Rare Operations LLC,* No. 20-CV-5330 (BCM), 2022 U.S. Dist. LEXIS 4833, at *33 (S.D.N.Y. Jan. 10, 2022) (permitting plaintiffs' counsel to disseminate the notice two times each by mail, email, and text message during the opt-in period); *see also Chui v. Am. Yuexianggui of Li LLC,* No. CV 18-5091 (SJF) (AKT), 2020 U.S. Dist. LEXIS 117296, at *28 (E.D.N.Y. July 2, 2020); *Quiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020); *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 U.S. Dist. LEXIS 60158, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016); *Martin v. Sprint/united Mgmt. Co.*, No. 15 CIV. 5237, 2016 U.S. Dist. LEXIS 352, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016);

*Bhumithanarn v. 22 Noodle Mkt. Corp.*, 14-CV-3624, 2015 U.S. Dist. LEXIS 90616, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015).

Therefore, Plaintiff respectfully requests that the Court permit Plaintiff to disseminate the Notice by mail, e-mail, and text messages.

### E.  THE PROPOSED NOTICE IS FAIR AND ADEQUATE

Attached as **EXHIBIT A** hereto is Plaintiff's proposed collective notice. The proposed notice provides clear instructions on how to opt in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. The Supreme Court specifically left the "content details of a proposed notice under § 216(b) . . . to the broad discretion of the court." *Lee*, 236 F.R.D. at 202; *see also Gjurovich*, 282 F. Supp. 2d at 106. "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli*, 516 F. Supp. 2d at 323. The proposed notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should be adopted.

### F.  OPT-IN NOTICE PERIOD OF SIX YEARS IS APPROPRIATE

A notice period of six years prior to filing of the Complaint is appropriate because Plaintiff and the Covered Employees' State law claims have a six-year limitations period. "Multiple courts in the Eastern District, including this Court, have held that in some circumstances where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims." *Garriga v. Blonder Builders Inc.*, No. CV 17-497 (JMA) (AKT), 2018 U.S. Dist. LEXIS 171887 at *20-21 (E.D.N.Y. Sep. 28, 2018)

(collecting cases). Because Plaintiff has sufficiently shown that he is similarly situated to the Covered Employees, and because "there may be a number of employees who have both timely state and FLSA claims," it is "logical, efficient, and manageable to compel defendants' production of these names only once." *Han v. Sterling Nat'l Mortgage Co., Inc.*, No. 09-cv-5589, 2011 U.S. Dist. LEXIS 103453, at *36 n.11 (E.D.N.Y. Sept. 14, 2011).

## G. OPT-IN PLAINTIFFS' CONSENT FORMS SHOULD BE SENT TO PLAINTIFF'S COUNSEL

While Plaintiff understands that it is the Court's general position that consent forms should be sent to the Clerk of the Court, Plaintiff respectfully requests that consent forms be sent to Plaintiff's counsel directly. Requiring opt-in claimants to file their forms with the Clerk discourages participation and prohibits Plaintiff's counsel from conducting his investigation and contacting his own possible clients. Based on Plaintiff's counsel's experience, this causes unnecessary delay and prevents Plaintiff's counsel from effectively representing the opt-in claimants. Moreover, potential claimants frequently require immediate guidance and any potential delay caused by the Clerk's Office (which in counsel's experience can be delayed for as long as a month) chills claimants who otherwise expect to be immediately contacted. Because workers are frequently itinerant, such delays sometimes cause claimants to be unreachable.

## H. EQUITABLE TOLLING

Should the Court grant the instant motion, Plaintiff respectfully requests that, to avoid inequitable circumstances, the FLSA statute of limitations be tolled until such time that Plaintiff is able to send notice to potential opt-in plaintiffs. *See Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014).

District courts in this and other Circuits have increasingly granted requests for equitable tolling to avoid the prejudice to actual or potential opt-in plaintiffs that can arise from the unique

procedural posture of such cases. *See Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014) (tolling the statute of limitations as of the date of the filing of the plaintiff's motion); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013) (tolling statute of limitations as of the date the plaintiff was originally scheduled to file her motion for conditional certification); *Kemper v. Westbury Operating Corp.*, No. 12 Civ. 895, 2012 WL 4976122, at *3 (E.D.N.Y. Oct. 17, 2012) ("[P]laintiff's request to notify individuals who were employed three years from the date plaintiff filed this motion, rather than from the date of the mailing of the notice, is granted."); *McGlone v. Contract Callers*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (tolling statute of limitations while conditional certification motion was being decided). Notably, Judge Tomlinson in *Garriga* granted equitable tolling from the date plaintiffs' collective certification motion was filed, recognizing plaintiff's diligence in seeking certification and the length of time that had passed since the certification motion was filed. *Garriga*, 2018 U.S. Dist. LEXIS 171887 at *32. Here, Plaintiff has similarly been diligent in seeking this certification and the Court should therefore grant equitable tolling from the date this motion is filed.

## VI.    CONCLUSION

The FLSA is a "uniquely protective," "remedial" and "humanitarian" statute. *See Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008). An express policy of the FLSA is "to correct and as rapidly as practicable to eliminate" certain "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." 29 U.S.C. § 202. The FLSA accordingly establishes a minimum wage, 29 U.S.C. § 206(a), "to secure for the lowest paid segment of the nation's workers a subsistence wage," *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946). The FLSA also requires the payment of overtime compensation, 29 U.S.C. § 207, "to remedy the 'evil of overwork' by

ensuring workers were adequately compensated for long hours, as well as by applying financial pressure on employers to reduce overtime," *Chao*, 514 F.3d at 285 (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 576-78 (1942)). When an employer fails to comply with its obligations, the Act requires the employer to provide the statutorily mandated compensation "to insure restoration [of its employees] . . . to [the] minimum standard of well-being" contemplated by the Act. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707(1945). As such, to further the legislative intent, class certification in this case must be granted, particularly to protect the rights of immigrant workers who may fear retribution for asserting their rights.

Therefore, for the foregoing reasons, Plaintiff respectfully requests that the Court conditionally certify his FLSA claims as a collective action and approve this motion in its entirety.

Dated: New York, New York          Respectfully submitted,
      April 19, 2023            **LEE LITIGATION GROUP, PLLC**

          By:    */s/ C.K. Lee*
                C.K. Lee, Esq. (CL 4086)
                Lee Litigation Group, PLLC
                148 West 24th, 8th Floor
                New York, NY 10011
                Tel: (212) 465-1188
                Fax: (212) 465-1181
                *Attorneys for Plaintiff, FLSA Collective*
                *Plaintiffs and the Class*