UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANDY YUWONO, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

                              Plaintiff,

          v.

POKE FIDI LLC
    d/b/a CHIKARASHI FIDI,
POKE NYC LLC
    d/b/a CHIKARASHI CHINATOWN,
POKE NOMAD LLC
    d/b/a CHIKARASHI NOMAD,
CANAL ARCADE LLC
    d/b/a NAKAJI,
JOHN DOE CORPORATION d/b/a KONO,
MICHAEL JONG LIM,
IVY TSANG a/k/a IVY CHU,
JONATHAN CHU,
and SELWYN CHAN,

                              Defendants.

Case No.: 22-cv-05052 (JLR)(JW)

---

## DECLARATION OF SANDY YUWONO

I, SANDY YUWONO, under penalty of perjury, affirm as follows:

1. I was employed by Defendants from October 25, 2021, to January 1, 2022, to work at Defendants' Chikarashi Isso restaurant located at 38 Rector Street, New York, New York 10006.

2. Defendants Michael Jong Lim, Ivy Tsang a.k.a Ivy Chu, Jonathan Chu, and Selwyn Chan have owned and operated five (5) restaurants in New York:

    a) Chikarashi Financial District, 38 Rector Street, New York, NY 10006;

    b) Chikarashi Chinatown, 227 Canal Street, New York, NY 10013;

    c) Chikarashi Nomad, 1158 Broadway, New York, NY 10001;

    d) Nakaji, 48A Bowery, New York, NY 10013; and

    e) Kono, 46 Bowery, New York, NY 10013 (collectively, the "Restaurants")

1

Specifically, Individual Defendants and spouses Ivy Chu and Jonathan Chu were in charge of the restaurant, employees, human resources, finance, and operations. Jonathan Chu was always in the restaurant eating, asking to be served, or ordering employees around. Whenever Defendant Jonathan Chu wanted to give me or my colleagues an order or directions, he called the General Manager Louis Andia and sent the message with him.

3.   I have spoken with former employees of Chikarashi Isso regarding our wages. Such employees include, but are not limited to:

| Name | Position | Location |
| --- | --- | --- |
| Ivone [Last Name Unknown] | Server | Chikarashi 38 Rector Street, Chikarashi Nomad, and Nakaji |
| Arnold ("Nono") Mendoza | Server | Chikarashi 38 Rector Street and Nakaji |
| Aziz Barry | Food Runner | Chikarashi 38 Rector Street, and Chikarashi Chinatown |

Based on my work experience and my personal observations and conversations with Ivone, Arnold, Aziz, and other co-workers, I know that all employees were subject to the same wage and hour policies. I regularly spoke with my co-workers while preparing and arranging trays, and in between serving customers and it was common knowledge that Defendants engaged in the practices described below. Also, the same individuals set the wage policies at Defendants' Restaurants and implemented the payroll for all locations.

4.   Throughout my employment, I was compensated $10 per hour.

5.   Defendants scheduled me to work five (5) days per week, from 4:00 p.m. to 10:00 p.m., for a total of thirty (30) hours per week. However, I worked significantly more hours per week. At least once per week, Defendant Jonathan Chu or the General Manager Louis Andia would direct me to work double shifts from 11:00 a.m. to 10:00 p.m. Nonetheless, on a daily basis, Defendants required me to continue working past midnight. Typically, I worked at least forty-five (45) hours per week.

6. Nevertheless, Defendants compensated me only for the hours that I was scheduled to work and not for all the hours that I worked under Defendants' orders. Every day of my employment, Defendants required me to record my time worked. For that, Defendants had computers by the bar, in the kitchen, and in the dining area. However, even when I was ordered to clock in and out at the beginning and end of my work shift, Defendants requested me to clock out before 10:00 p.m. and then continue working until 1:00 a.m. off the clock. Similarly, I was clocking in when I began working, which was usually fifteen (15) minutes before my scheduled shift. However, the General Manager Louis Andia would alter the entries to make it look as if I was not working more than thirty (30) hours per week. Sometimes, when the Manager was angry or resentful, he would deduct more hours. He said that he was doing that to "make us learn who is the boss."

7. I remember discussing this issue with Aziz while we were on the dining floor after I received my first payment, around early November 2021. After I saw him clocking out to continue working, I asked him if he was always time-shaved. He told me that he was working more than forty (40) hours per week but never saw that on his payments. As time shaving is unlawful, I asked him if he ever complained or who I should ask to correct my payment, and he told me to never complain because other employees that complained before lost their jobs on the spot. Based on my observations and conversations with other employees, (including, but not limited to, individuals listed in ¶ 3 herein) it is common that employees work before and after their scheduled shifts without receiving compensation for the work performed off the clock.

8. Moreover, Defendants automatically deducted a half-hour from our payments under the concept of breaks. During my employment, I never took a free and clear break as I was always required to work straight through my shift. Every time that I tried to take a break,

Defendants would direct me to keep working. This deduction was so automatic that even when I was scheduled to work a double shift and had two unpaid hours in between, Defendants additionally deducted a half-hour from each shift.

9. Similarly, every time that an employee (including, but not limited to, individuals listed in ¶ 3 herein) intended to take a break, Defendants would request the employee to keep working. For example, once near Black Friday, Arnold was trying to go outside to take a breath, the General Manager came and told him to help with cleaning the counter area as breaks were forbidden. Nonetheless, even though breaks were forbidden, Defendants deducted a half hour from our wages for breaks that we never took.

10. Even though I was a tipped employee, Defendants required me to work multiple roles. Every shift, I was performing porter and kitchen tasks for over two hours per shift. On a daily basis, I had to clean all the premises, including the kitchen, storage areas, windows, the dining area and the bathrooms. Moreover, I had to help wash dishes, polish silverware and glasses, help with food preparation, and unload and accommodate deliveries. Despite that I would spend several hour performing non tipped activities, Defendants always compensated me on a tip credit basis. Other employees (including, but not limited to, individuals listed in ¶ 3 herein) that were compensated on a tip-credit basis, were similarly required to perform non-tipped tasks for several hours each shift. I remember discussing this issue with Ivone. Ivone was very upset for this, he told me "I work for the tips and they don't let me earn my tips, I can't afford to live with $10 per hour." I remember overhearing other servers (they quit really fast, I can't remember their names) complaining to Defendants about this issue. They told the Manager: "This is not our job. If you keep making us do this, we are going to quit!" and they did.

4

11. Defendants retained a massive amount of the tips and distributed to the employees the leftovers. Every day, we gave the Manager our tips, he would collect everything, take a portion for himself and another for the Individual Defendants and then, what was left, was divided by all tipped employees, even those that were not working that day. However, the employees that were not scheduled never received their alleged part of the tips. Nobody knows where that money went. Even for me, when I was not on the schedule, I never received the portion of the tips that Defendants in theory allocated for me.

12. Once, after a busy shift after Black Friday, Arnold and I were discussing how even when the place was fully booked, our tips were too low. Then we discussed about how much tips Defendants took for their pockets, and how unfair it was to divide the tips among all the tipped employees but not giving the divided portion to the tipped employees. We agreed that it was non-sensical and seemed illegal. Arnold told me he worked at the other locations and that Defendants did the same at all of their other restaurants. A server that was working at another Chikarashi location, Nakaji, complained that Defendants have the same unlawful policies over there as well.

13. I never had meals from Defendants, specifically because the meal policy was impractical. Defendants instructed that if I wanted a meal, I had to arrive to work one hour before my scheduled shift. As this was inconvenient for me, I never took meal from Defendants. However, Defendants deducted $10.80 per week even when they were aware that I was not consuming their meals.

14. From what I saw and discussed with my colleagues, Defendants automatically deducted meal credits from their payments as well. I remember that Ivone was very angry about this. Ivone said, "I don't even eat their crumbs, but they take from me more than what I earn in one hour."

15. Throughout my employment with Defendants, I worked shifts lasting over ten (10) hours. Defendants never provided me with my spread of hours premium for these shifts. Based on my personal observations and conversations with co-workers, other employees were similarly not paid spread of hours premium when working shifts exceeding ten (10) hours in duration.

16. Based on my work experience, my personal observations and conversations with coworkers, I know that all employees employed by Defendants were subject to the same wage and hour policies. It was common to engage in conversations with my coworkers, while cleaning and in between serving clients, about how Defendants compensated us on a tip-credit basis when in reality, our tipped activities were reduced to a couple of hours. My colleagues and I were afraid of complaining to Defendants about tips and compensation because we saw how Defendants overreacted when employees asked for their proper compensation.

17. When I was hired by Defendants, Defendants never provided me with a proper wage and hour notice as required under the New York Labor Law. The wage notice provided to me listed the wrong hourly pay rate, the wrong amount for the meal credit deduction, and the wrong hourly overtime pay rate, and also did not list any allowances for Defendants' tip credit. Based on my personal observations and conversations, no other employee (including, but not limited to, individuals listed in ¶ 3 herein) ever received a proper written wage and hour notice at the time of hiring or thereafter, informing them of their rates of pay or other requirements under the New York Labor Law.

18. Furthermore, Defendants never provided me with proper written notice that they were claiming a tip credit. On the only notice I received, Defendants did not list an allowance for any tip credit deductions. Based on my personal observations and conversations, no other

employee (including, but not limited to, individuals listed in ¶ 3 herein) ever received proper notice informing them that Defendants were claiming a tip credit.

19. I never received wage statements from Defendants. During my employment, Defendants compensated me with direct deposits. I never received a paystub or an accompanying document describing how many hours I worked during the week, hourly wages, tips, deductions, or anything. Based on my personal observations and conversations with my co-workers, other employees (including, but not limited to, individuals listed in ¶ 3 herein) never received wage statements. Defendants never informed me or other tipped employees how much tip credit allowance they were claiming for every pay period.

20. I agree to act as a class representative and am of sound mind and body.

21. I do not have any conflicts with prospective class members.

22. I do not want to settle on individual basis and intend to proceed with a class lawsuit and resolution.

[REST OF PAGE LEFT INTENTIONALLY BLANK]

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

| | |
|---|---|
| 4/18/23 | *Sandy Yuwono (Apr 18, 2023 18:41 EDT)* |
| Dated | Sandy Yuwono |